*This opinion will be unpublished and*
*may not be cited except as provided by*
*Minn. Stat. § 480A.08, subd. 3 (2014).*

**STATE OF MINNESOTA**
**IN COURT OF APPEALS**
**A14-1562**

In the Matter of the Application for
MSRS State Patrol Plan Duty Disability Benefits for
Riccardo V. Munoz.

**Filed April 27, 2015**
**Reversed**
**Stoneburner, Judge**[*]

Minnesota State Retirement System
File No. OAH 60-4100-31027

Robert J. Fowler, Fowler Law Firm, LLC, Little Canada, Minnesota (for relator)

Lori Swanson, Attorney General, Kevin Finnerty, Assistant Attorney General, St. Paul, Minnesota (for respondent)

Considered and decided by Rodenberg, Presiding Judge; Johnson, Judge; and Stoneburner, Judge.

**U N P U B L I S H E D   O P I N I O N**

**STONEBURNER**, Judge

Relator challenges respondent's determination that he is not entitled to duty-disability benefits. Because the determination is not supported by substantial evidence in the record, we reverse.

---

[*] Retired judge of the Minnesota Court of Appeals, serving by appointment pursuant to Minn. Const. art. VI, § 10.

## FACTS

In 2001, relator Riccardo Munoz, after meeting hiring criteria including a psychological evaluation, was hired as a Minnesota State Trooper. Due to performance issues, he was asked to resign near the end of his probationary period in 2002, but he was reinstated in 2005.

In 2013, Munoz was required to undergo a fitness-for-duty evaluation by Dr. April Leaveck, Psy.D., a licensed psychologist. Dr. Leaveck, based on a clinical interview with Munoz, review of work records, and psychological testing, found Munoz unfit for duty as a result of psychological issues, which she did not attribute to his work as a state trooper. Her report specifically notes that other records or documents not available to her might affect her opinions.

Munoz was evaluated by two other licensed psychologists, Dr. Michael Keller and Dr. Robert Peterson, both of whom concurred that Munoz is disabled by psychological issues, which affect his performance as a state trooper. Both opined that the psychological issues are not work-related.

Munoz, who was puzzled by the outcome of the psychologists' evaluations, had a physical examination by his family doctor who recommended that Munoz consult with Dr. Sujit Varma, a medical doctor and board-certified psychiatrist, for treatment. Dr. Varma is the first examiner to ask Munoz if he had been in any crashes or had any concussions. Munoz responded that he had been in numerous car crashes while working as a trooper and had concussions. Based on Munoz's reporting about the crashes, information from Munoz's wife, which included her observation of Munoz's behavioral changes after a significant

2

crash in October 2007, and documentation from the state patrol about the crashes (including photographs and videos), Dr. Varma diagnosed Munoz with: (1) mood-disorder, not otherwise specified; (2) personality change due to post-concussion syndrome, a medical condition; and (3) post-traumatic-stress disorder (PTSD), related to occupational hazards.

Munoz applied for disability and duty-disability benefits, submitting physician statements from Dr. Keller, Dr. Peterson, and Dr. Varma. He was approved for disability benefits but denied duty-disability benefits. He appealed, and a fact-finding hearing took place before an administrative-law judge (ALJ) on December 10, 2013, and January 29, 2014. Munoz, Munoz's wife, and Dr. Varma testified at the hearing in support of Munoz's application. Dr. Varma described, in detail, the bases of his diagnoses of mood disorder, personality change due to post-concussion syndrome, and PTSD.

Dr. Varma questioned the unexplained statement by Dr. Peterson that Munoz's mental-health issues "likely date back to adolescence" and the lack of documentation of the source of Dr. Peterson's diagnosis of "antisocial and narcissistic personality disorder." Dr. Varma opined that Munoz does not have an antisocial and narcissistic personality disorder, which, Dr. Varma testified, is something "very easily diagnosable by someone in my practice." Dr. Varma testified about his confidence in his diagnoses that Munoz's personality changes result from concussions and crashes Munoz suffered on the job. Dr. Varma noted that the psychologists who evaluated Munoz had limited contact with him. Dr. Varma opined, based on his on-going contact with Munoz, that Munoz is not malingering and that Munoz's symptoms are not consistent with Dr. Peterson's diagnosis of a pre-existing condition.

3

The only witness for the Minnesota State Retirement System (MSRS) was Executive Director David Bergstrom, who testified that duty-disability benefits were denied based on evidence of conditions dating back to 2002, certification by the Department of Public Safety and "multiple doctors" saying that Munoz's disability is not duty related, and lack of documentation of concussion or head injuries at the time of any of the crashes in which Munoz was involved. Despite the one-month break between hearing dates, MSRS presented no evidence from the evaluating psychologists or any other medical professional rebutting Dr. Varma's testimony.

The ALJ issued detailed findings of fact, conclusions of law, and a recommendation that Munoz qualifies for duty-disability benefits. The ALJ's findings describe on-the-job collisions in which Munoz was involved that occurred on October 25, 2005, August 19, 2006, October 26, 2007, September 26, 2011, and August 21, 2012. The ALJ found that Mrs. Munoz noticed changes in Munoz after the October 26, 2007 accident. The ALJ found that the psychologists who assessed Munoz "lack the training and experience to render an opinion on post concussive syndrome or of traumatic brain injuries." The ALJ concluded that Munoz met his burden of showing by a preponderance of the evidence that he is eligible to receive duty-disability benefits and established by a preponderance of the evidence that his disability arises out of the performance of his work duties.

In an accompanying memorandum, the ALJ stated that the case turns on Dr. Varma's diagnosis and his credibility. The ALJ noted that Dr. Varma had been treating Munoz for six months and had seen him seven times, obtained a family history with input from Mrs. Munoz, and reviewed the evidence from the State Patrol regarding the car crashes. Dr.

4

Varma explained that lack of contemporaneous reports of Munoz suffering a concussion is not surprising given the nature of the injury. The ALJ found that "Dr. Varma was an extremely credible witness. He is a medical doctor who is also [a] Board certified psychiatrist."

The MSRS Board of Directors considered Munoz's appeal at its regular meeting in July 2014. After presentations from counsel for Munoz and MSRS and questioning by board members, the board voted 6-4 to deny duty-disability benefits and subsequently issued its written decision and order denying duty-disability benefits in which it adopted many of the ALJ's findings of fact and modified other findings. The board rejected the ALJ's statement about the centrality of Dr. Varma's credibility to the determination of duty disability and concluded that Munoz failed to establish by a preponderance of the evidence that his disability meets the requirements for an award of duty-disability benefits. This appeal followed.

## D E C I S I O N

A Minnesota State Patrol Trooper is entitled to recover duty-disability benefits if a disabling disability "is the direct result of any injury incurred during, or a disease arising out of, the performance of normal duties or the actual performance of less frequent duties." Minn. Stat. §§ 352B.011, subd. 7, .10, subd. 1 (2012). It is undisputed that Munoz has a disabling disability that qualifies him for disability benefits, and the sole issue before the board is whether Munoz qualifies for duty-disability benefits.

A public retirement fund board is comparable to an administrative agency. *See Axelson v. Minneapolis Teachers' Ret. Fund Ass'n*, 544 N.W.2d 297, 299 (Minn. 1996). An

administrative agency's decision is entitled to substantial deference. *Citizens Advocating Responsible Dev. v. Kandiyohi Cnty. Bd. of Comm'rs*, 713 N.W.2d 817, 832 (Minn. 2006). This court will reverse an agency's decision only if it is "fraudulent, arbitrary, unreasonable, unsupported by substantial evidence, not within its jurisdiction, or based on an error of law." *Axelson*, 544 N.W.2d at 299 (quotation omitted). The party seeking review of an agency's decision has the burden to show that its findings are either unsupported by evidence in the record, considered in its entirety, or are arbitrary and capricious. *See In re Application of Allers*, 533 N.W.2d 646, 652 (Minn. App. 1995), *review denied* (Minn. Aug. 30, 1995).

Munoz first argues that the board made an error of law by rejecting the ALJ's finding that the evaluating psychologists "all lack the training and experience to render an opinion on post concussive syndrome or of traumatic brain injuries." Munoz asserts, without citation to authority, that the board acted in disregard of "the well[-]established principle that only Medical Doctors are competent by law, licensure, and rules of evidence, to render expert medical opinions and medical diagnoses." Munoz argues that because psychologists are not medical doctors, they are not qualified, as a matter of law, to diagnose concussions.[1]

But the psychologists involved in this case did not make or reject any medical diagnoses: the psychologists were not provided with any information about crashes that may have caused head injuries to Munoz. Dr. Keller and Dr. Leaveck specifically cautioned that additional information could affect their opinions. Nonetheless, once Munoz and MSRS became aware of Dr. Varma's diagnosis of a medical cause for Munoz's personality

---

[1] Munoz does not argue that psychologists are unable to render opinions or diagnoses of psychological issues, including a person's psychological fitness for a particular occupation.

changes, none of the psychologists were asked if this additional information about possible head trauma affected the prior opinions given.[2]

The problem with the causation opinions reflected in the psychologists' reports is that those opinions were given without knowledge of a possible medical explanation for Munoz's personality change, thereby undermining, by the terms of the opinions themselves, the conclusions reached by the psychologists about the cause of those changes. As a result, the causation opinions of the psychologists are not supported by substantial evidence in the record.

"A decision is supported by substantial evidence when it is supported by (1) such relevant evidence as a reasonable mind might accept as adequate to support a conclusion; (2) more than a scintilla of evidence; (3) more than some evidence; (4) more than any evidence; or (5) the evidence considered in its entirety." *Minn. Ctr. for Envtl. Advocacy v. Minn. Pollution Control Agency*, 644 N.W.2d 457, 464 (Minn. 2002). And "an agency ruling is arbitrary and capricious if the agency . . . entirely failed to consider an important aspect of the problem . . . [or] offered an explanation that runs counter to the evidence." *Citizens Advocating Responsible Dev.*, 713 N.W.2d at 832.

The board disregarded the unrebutted testimony of Dr. Varma that Munoz's personal changes resulted from on-the-job trauma and appear to have adopted Bergstrom's opinion that, due to the lack of documentation contemporaneous with crashes, Munoz did not suffer

---

[2] The record reflects that none of the psychologists asked Munoz about head injuries or car crashes, and Munoz did not volunteer information about car crashes during psychological evaluations. The record reflects that Munoz was unaware of any possible connection between trauma and his personality changes until he met with Dr. Varma.

7

any concussions.  But lack of contemporaneous documentation of concussions is not proof that Munoz did not suffer the type of trauma Dr. Varma opined resulted from the crashes. The board credited the psychologists' opinions about causation, despite the fact that none of the psychologists had information about Dr. Varma's diagnosis.  The board's decision is not supported by substantial evidence in the record.  The substantial evidence in the record is the unrebutted testimony of Dr. Varma that the personality changes that constitute Munoz's disability result from on-the-job crashes and trauma.  We conclude that Munoz has met his burden to establish by a preponderance of evidence that he is entitled to duty-disability benefits.

Munoz, without citation to authority, asserts that the board's decision was so arbitrary and capricious that he is entitled to an award of attorney fees.  Because there is no statutory or contractual basis for an award of attorney fees, we find this argument without merit.  *See Ganguli v. Univ. of Minn.*, 512 N.W.2d 918, 919 n.1 (Minn. App. 1994) (declining to address allegations unsupported by legal analysis or citation).

**Reversed.**